# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH SARNICOLA,** | ) | **CIVIL ACTION NO.**  2:23-cv-769 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **JOYCE FACTORY DIRECT, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

### I.    PRELIMINARY STATEMENT

By this action, Plaintiff, Joseph Sarnicola, seeks wage loss, compensatory and punitive damages, costs, attorneys' fees, pre and post-judgment interest because Joyce Factory Direct, LLC retaliated against him for opposing age and disability discrimination in violation of Americans with Disabilities Act of 1990, amended, 42 U.S.C. § 12112 ("ADA"), Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) ("ADEA"). Further, Joyce Factory Direct, LLC retaliated against Mr. Sarnicola for opposing unfair and illegal wage practices under the Fair Standards Labor Act. Joyce Factor Direct, LLC also retaliated against Mr. Sarnicola for reporting public safety code violations in violation of Pennsylvania Public Policy. Finally, Mr. Sarnicola brings this lawsuit because Joyce Factory Direct, LLC recorded him without his knowledge or consent.

### II.    JURISDICTION

1.      This Court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States.

1

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship, and the acts constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

3. On September 13, 2022, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") against the Defendant, alleging retaliation for engaging in protected activity. Plaintiff's Charge was dual-filed with the Pennsylvania Human Rights Commission (hereinafter "PHRC").[1]

4. The EEOC issued a Notice of Right to Sue Letter to Plaintiff on February 8, 2023. This Complaint has been filed within ninety (90) days of the Plaintiff's receipt of the letter, thus making this action timely.

### III.    PARTIES

5. Plaintiff is Joseph Sarnicola (hereinafter "Mr. Sarnicola"), an adult individual who resides in Allegheny Co.

6. Defendant Joyce Factory Direct, LLC (hereinafter "Joyce") is a foreign limited liability company located at 11676 Perry Highway, Suite 3305, Wexford, PA 15090, and later at 4583 Campbells Run Rd., Pittsburgh, PA 15205.

7. At all relevant times, Joyce is an employer within the definition of the ADA, ADEA, FLSA, and Pennsylvania Public Policy.

8. At all relevant times, Mr. Sarnicola was an employee of Joyce within the definition of ADA, ADEA, FLSA, and Pennsylvania Public Policy.

---

[1] Once the administrative requirements have been exhausted, Plaintiff intends to amend this Complaint to include two additional counts under the PHRA.

## VI.     STATEMENT OF CLAIM

9.     On or about October 5, 2021, Joyce hired Mr. Sarnicola as the Production Manager for their Pittsburgh, PA location.

10.     Mr. Sarnicola was an excellent employee who received praise from the employees he managed and his employers.

11.     Prior to working for Joyce, Mr. Sarnicola spent five years managing his own flooring business in Allegheny Co. and understood the building code for Allegheny Co. and the City of Pittsburgh.

12.     Mr. Chris Sawicki is Joyce's Vice President of Operations.

13.     At all relevant times of the Complaint, Mr. Sawicki was approximately forty-two years old.

14.     Mr. Sarnicola reported directly to Mr. Sawicki.

15.     On or about October 25, 2021, Mr. Sarnicola started working for Joyce.

16.     In or around October 2021, Mr. Sarnicola spent his first two weeks of employment at the Northern Ohio location allegedly for training. However, Mr. Sarnicola was not trained but spent two weeks filling in for understaffed positions.

17.     In or around November 2021, Mr. Sarnicola started working at Joyce's Pittsburgh location ("Pittsburgh Location").

18.     In or around November 2021, Mr. Dave Donatelli was the Pittsburgh Location Warehouse Manager. Mr. Donatelli worked for Joyce for several years.

        a.     Mr. Donatelli is approximately 60 years old.

   b. Mr. Donatelli has a disability. Mr. Donatelli has back and knee problems that affect his ability to stand for long periods of time, walk, and lift things.

19. Upon starting work at the Pittsburgh Location, Mr. Sarnicola observed that Joyce did not require service providers to obtain proper permits or inspections for three major projects, including a complete renovation of bathrooms.

20. Mr. Sarnicola informed Mr. Sawicki that the Pittsburgh Location installers were not obtaining the proper permits or inspections and not following building codes for the projects. Mr. Sawicki informed Mr. Sarnicola that Joyce would pull out of the contracts if anyone "asked about it."

21. Not following proper building codes could result in faulty work.

22. Joyce's failure to follow building codes and permits did in fact result in faulty work including leaking bathrooms, and other botched projects for which Mr. Sarnicola received numerous complaints.

23. Mr. Sarnicola also alerted Angela Decaro, the manager of the Pittsburgh location prior to Mr. Sarnicola, that proper permits and inspections, were not following building codes and were not being obtained and that building codes were not being observed. Ms. Decaro did not correct the failure to follow proper safety codes.

24. Mr. Sarnicola continued to raise violations of the Pittsburgh plumbing code and insisted on following Pennsylvania public policy.

25. In or around November 2021, Mr. Sarnicola also realized that Joyce misclassified their employees as independent contractors. Mr. Sarnicola correctly observed that the installers were employees because the installers:

   a. wore Joyce uniforms,

  b. worked exclusively for Joyce,

  c. were told which jobs to work on,

  d. did not have their own companies,

  e. were told how many hours to spend on a job,

  f. Joyce would fire subcontractors,

  g. Joyce would also require subcontractors to pick up checks from the customers once the job was completed.

  h. As such, the "contractors" should have been paid as employees including overtime.

26. Joyce failed to pay the installers overtime wages.

27. Mr. Sarnicola informed his supervisor Chris Sawicki on several occasions that the installers should have been paid overtime as they qualified as employees. But he was ignored each time.

28. Mr. Sarnicola informed the installers that they were not being paid properly.

29. In or around early 2022, Mr. Donatelli asked for several accommodations for his knee and back problems from Mr. Sarnicola including:

  a. Assistance moving and lifting items in the warehouse, and

  b. Assistance in tasks that required him to stand for long periods of time.

30. As Mr. Donatelli's supervisor, Mr. Sarnicola granted the accommodations and tried to help Mr. Donatelli as much as he could with tasks that required lifting, bending or standing for long periods of time.

31. On or about April 14, 2022, Mr. Sarnicola received a sudden call from Mr. Sawicki asking him to fire Mr. Donatelli.

    a.    Mr. Sarnicola was taken aback as Mr. Donatelli had done nothing wrong.

    b.    Mr. Sawicki had made many comments about wanting younger employees.

    c.    Mr. Sawicki made comments about Mr. Donatelli's disabilities.

    d.    Mr. Sawicki referred to Mr. Donatelli as a "cancer" on the organization.

    e.    Mr. Sarnicola expressed to Mr. Sawicki that terminating Mr. Donatelli was illegal.

    f.    However, Mr. Sawicki wanted Mr. Donatelli fired anyway.

32. Mr. Sarnicola went to Mr. Donatelli and informed him that Mr. Sawicki wanted his employment terminated.

33. In or around April 2022, Mr. Sawicki replaced Mr. Donatelli with an approximately thirty-year-old warehouse employee.

34. Mr. Sarnicola held a good faith belief that Mr. Donatelli was fired because of his age, 60 years old, and disabilities.

35. On April 20, 2022, six days later, Mr. Sawicki called Mr. Sarnicola and fired him suddenly and without warning.

36. Mr. Sarnicola had no write-ups or bad performance reviews prior to Mr. Sawicki terminating his employment.

37. During the termination call, Mr. Sawicki informed Mr. Sarnicola that he had installed a camera with voice recording in Mr. Sarnicola's office.

38. Mr. Sarnicola was never informed that he was being audio recorded at any time during his employment.

39. There were no signs at Joyce's Pittsburgh location indicating that Mr. Sarnicola's audio was recorded in his office.

40. Mr. Sarnicola was recorded without his knowledge.

41. Mr. Sarnicola had not given any notice to Joyce or Mr. Sawicki. Mr. Sarnicola had planned to stay at his job.

42. The temporal proximity to Mr. Sarnicola's discrimination complaints and his termination serves as evidence of causation.

43. The retaliation Mr. Sarnicola suffered while working for Defendant affected his self-esteem and caused him severe emotional distress.

44. The Defendant's extreme and outrageous conduct warrants the imposition of substantial compensatory damages and punitive damages.

## V.     CLAIMS FOR RELIEF

### Count I - Retaliation ADA and ADEA

45. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

46. Plaintiff engaged in protected activity by reporting age and disability discrimination.

47. Defendant intentionally retaliated against Plaintiff for opposing Defendant's discrimination as evidenced by, among other things, Defendant's actions and comments in and the temporal proximity of the actions and comments to Plaintiff's termination of employment.

48. By reason of Defendant's unlawful, willful, outrageous and intentional misconduct towards Plaintiff, Plaintiff is entitled to recover both compensatory and punitive damages in addition to actual damages.

49. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

### Count II - Retaliation FLSA

50. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

51. The FLSA prohibits retaliation by employers against employees for asserting their rights under the Act. 29 U.S.C. § 215(a)(3).

52. Defendant violated the FLSA's anti-retaliation provision when it took materially adverse employment actions against Plaintiff for asserting rights on behalf of underpaid individuals.

53. As a result of Defendant's violations of the FLSA, Plaintiff has suffered damages, including, but not limited to: loss of employment, diminishment of career opportunities, past and future lost wages, reputational harm, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, and other harm, both tangible and intangible.

54. The foregoing actions, policies, and practices of Defendant violate the FLSA by misclassifying employees as independent contractors and failing to pay them overtime.

55. Defendant's actions were willful, in bad faith, and in reckless disregard of clearly applicable FLSA provisions.

56. Defendant is liable to Plaintiff for actual damages, liquidated damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

### **Count III - PA Wiretapping and Electronic Surveillance Control Act**

57. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

58. The Pennsylvania Wiretap Act (the "Act") prohibits (1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication. 18 Pa. Cons. Stat. § 5703.

59. Any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Act is subject to a civil action for (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred. 18 Pa. Cons. Stat. § 5725(a).

60. Defendant intentionally recorded and listened to conversations without Plaintiff's consent or knowledge.

61. Plaintiff had a justified expectation under the circumstances that he was not being recorded in his private office.

62. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## Count IV - Violation of Public Policy

63. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

64. Plaintiff opposed several illegal practices of the employer designed to protect the health and safety of PA residents including failing to obtain building permits and follow building code.

65. Plaintiff also opposed the employer's failure to pay overtime wages.

66. Pennsylvania has a recognized public policy interest in ensuring building codes and permits are followed.

67. Pennsylvania has a recognized public policy interest in ensuring workers are paid fairly.

68. Plaintiff's termination interferes with his obligation to pursue any safety concerns.

69. This retaliation was intended to and does have a chilling effect on employees and impedes the broad range of reporting of operational and safety issues along all business lines.

70. The conduct of Defendant was intentional and/or in reckless disregard of the rights of Plaintiff.

71. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff was deprived of his job and has lost income in the form of wages, benefits, and future job opportunities.

72. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a) Assume jurisdiction herein;

(b) Declare Defendant's conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c) Award Plaintiff wage loss damages, including back pay and front pay, damages associated with the increased tax burden of any award, and lost fringe and other benefits of employment;

(d) Award Plaintiff compensatory damages;

(e) Award Plaintiff punitive damages;

(f) Award Plaintiff pre and post-judgment interest;

(g) Award Plaintiff costs and attorneys' fees; and

(h) Grant such other relief as the Court deems just and appropriate.


Respectfully Submitted,


*/s/ Rachel L. McElroy*
Rachel L. McElroy, Esq.
PA ID No. 321624

McElroy Law Firm, LLC
100 First Ave., #1010
Pittsburgh, PA 15222
Phone: 412-620-8735
rachel@mcelroylawfirm.com

Attorney for Plaintiff